### LAWTON et al. v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 10437.

Circuit Court of Appeals, Sixth Circuit.

Nov. 24, 1947.

Wilbur M. Brucker, of Detroit, Mich. (Wilbur M. Brucker and Ethan C. Prewitt, both of Detroit, Mich., on the brief; Clark, Klein, Brucker & Waples, of Detroit, Mich., of counsel), for petitioners.

George A. Stinson, of Washington, D. C. (Sewall Key, A. F. Prescott and Hilbert P. Zarky, all of Washington, D.C., on the brief), for respondent.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

If the Tower and Lusthaus cases, (Commissioner of Internal Revenue v. Tower), 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, (Lusthaus v. Commissioner of Internal Revenue), 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, compel disregard, for tax purposes, of all family partnerships, whatever the circumstances of their creation, or if the Tower doctrine requires that capital contributions as a basis for partnership interest be ignored whenever such capital stems from the head of the family, however remote in time and circumstance, or if the Commissioner is vested with authority in such cases to comparatively evaluate the contribution of each partner to the earnings of the partnership, it may be that the decision of the Tax Court, presently reviewed, must be sustained. If; however, neither Tower nor Lusthaus announces such doctrine, a contrary result may be required. The problem thus perceived requires consideration of the circumstances leading to the formation of the family partnership here involved.

The deficiencies asserted by the respondent in the tax returns of Lawton for 1940 and 1941, involve the status as his partners of his wife Lucy, his sons Norman and Leonard, his daughters Dorothy K. Whiton and Vivian Stanley, and one William Blakley. They were asserted upon the ground that all capital gain resulting from the liquidation of a corporation constituted his income, and that the distributive shares of the income of a partnership thereafter formed, was likewise his income. The corporation was the Star Cutter Company, and the successor partnership bears the same name.

Prior to 1927 Lawton had become highly skilled in the designing of special tools for high-speed precision cutting, gaining his experience in the employ of Detroit manufacturers producing such tools. On that date he organized his own corporation, the Star Cutter Company, with an authorized capital of 1,000 shares of common stock at the par value of $10 per share. Whether this capital was all paid in does not appear. The incorporators and the number of shares subscribed for were:

| | |
|---|---|
| Howard B. Lawton | 290 |
| J. Frank Burgess | 190 |
| Howard G. Pillsbury | 10 |
| Lucy M. Lawton | 10 |
| Gertrude A. Burgess | 10 |

In 1929 Blakley purchased Pillsbury's shares for $250 and Lawton acquired the shares of Frank and Gertrude Burgess, giving him at that time 980 shares, while his wife Lucy and Blakley each held 10 shares. When and how Lawton acquired additional shares does not appear. From the beginning Lawton was president and general manager of the corporation, worked in the machine shop, looked after sales and did the designing. His wife took complete charge of the office, numbered the purchase orders,

made out shop order forms and job tickets, issued invoices and statements, made book entries and placed orders for all materials. From 1927 to 1931 she worked six days a week, and from 1931 to 1940, five days a week and continued to assist the company for two or three days a week thereafter in figuring payrolls. She drew no salary for her services.

Lawton's son, Norman, had earlier assisted his father, but started working full time for the corporation in 1936 after receiving his engineering degree from the University of Michigan. He designed and supervised the erection of machines, and was also engaged in eradicating difficulties experienced by purchasers. He held the position of works manager, receiving a salary of $100 per week. Lawton's younger son, Leonard, began to work full time for the corporation in 1937. His work included running machines, some work outside the shop, and in 1940 or 1941, under pressure of war orders, taking charge of the third shift. Lawton's daughter, Vivian Stanley, came to work for the company in 1931, when she finished her high school course, and did general office work of the type performed by her mother. She was paid a nominal salary for her services, but in 1937 ceased to work for the corporation owing to the birth of a child. The younger daughter, Dorothy K. Winton, came into the office in 1937 and did all the office work under the direction of her mother until 1944. She likewise received a nominal salary. Blakley had been employed by the corporation since 1927 and in 1940 became shop superintendent. He was in charge of manufacturing and had supervision of all shifts.

On September 1, 1937, Lawton transferred 400 of his shares to his wife, 50 shares to each of his four children and 40 shares to Blakley. A gift tax return was filed but no tax was paid thereon because of exemptions. In 1938 Lawton and his wife each transferred 25 shares of stock to each of their four children. In 1939 Lawton transferred 8 shares to each of his children and 8 shares to Blakley, and in that year Mrs. Lawton transferred 32 shares to each of the children and a like amount to Blakley. In 1940 Lawton transferred 10 shares to each

of his children and 10 shares to Blakely. No gift tax returns were filed with respect to the 1938, 1939 and 1940 transfers. Lawton as president, and Mrs. Lawton as secretary, made the transfers on the stock books of the corporation. The old certificates were cancelled and new ones issued, the cancelled stubs and vouchers being placed in the minute book. Revenue stamps were affixed to the new certificates and they were thereafter kept in the company safe. As a result of these successive transfers the stockholders of the corporation, on August 31, 1940, were Lawton, his wife and four children, each with 150 shares, and Blakley with 100 shares. No dividends were ever paid or declared on the corporate stock.

In 1940 the petitioner, after discussing with others the possibility of saving taxes, and because he felt that the members of his family would work harder and feel a greater responsibility for the business if they were made partners, decided to dissolve the corporation and form a partnership. Articles of partnership were executed on August 31, 1940, giving the several partners the same proportional interest that they had held in the corporation. The partnership capital consisted of the assets of the Star Cutter Company, subject to outstanding obligations, the assets being duly assigned to the partnership. The articles provided that profits and losses were to be shared by the partners in proportion to their respective partnership holdings; that checks upon partnership funds could be signed either by Lawton or his wife, or by Norman or Blakley, and that all other papers, such as contracts and notes binding the partnership, might be signed by any two of its members. Any partner could sell his interest in the business provided he first offered his share in equal amounts to the other partners at book value, and the severance of a partner's connection with the firm was not to dissolve the partnership. The decision of a majority in value was to control management or any amendment to the articles.

Thereafter the business was carried on in the same manner as before, except that the partners no longer drew salaries. During the tax years the petitioner and his wife had a joint checking account, out of which Mrs.

Lawton paid her household expenses. All of the children were adults in 1940, with their own establishments. In their respective returns for 1940 each of the partners reported a long-term capital gain upon the liquidation of the corporation. The respondent determined, however, that Lawton was taxable upon the entire net income of the business, under § 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a). Some minor adjustments were made, not here in dispute, and the respondent's addition to capital gain on account of goodwill, having been disallowed by the Tax Court, disappears from the case with the failure of the Commissioner to appeal.

The Tax Court redetermined the deficiencies. It held the several transfers of stock not to constitute completed gifts, in consequence of which Lawton continued to be the main stockholder of the corporation up to the time of its dissolution, and so taxable on almost all of the gain incident thereto. It refused to consider the 10 shares received by Mrs. Lawton at the inception of the corporation, as her own, because they were qualifying shares, but recognized as his the 10 shares held by Blakley because he had purchased them in an arm's length transaction from others. It recognized Norman, Leonard and Blakley as valid partners because each had contributed substantially to the production of income and really intended to carry on the business as a partnership. It declined, however, to recognize Mrs. Lawton or her two daughters as partners, and redetermined Lawton's deficiency for the tax years to include 99% of the capital gain and 60% of the other income of the partnership for the tax years.

In denying validity to the gifts of Lawton and his wife in 1937, 1938 and 1939, the Tax Court based its decision partly upon the fact that the evidence consisted entirely of oral testimony due to the loss of the company books and records in 1942 and 1943, and because the stock certificates were not delivered to the donees but were kept in the company safe. There was evidence, however, uncontroverted and unimpeached, that the books and records were lost during the building of additions to the plant to take care of the company's expanding business,

and that persistent search over a number of years had failed to result in their recovery. Other factors relied upon were that the petitioner never relinquished dominion and control of the gifts, that there was no evidence that the purported donees ever exercised their voting rights on the stock, that no dividends were paid although the business was growing rapidly, and great significance was attached to the fact that Mrs. Lawton's gifts paralleled those of her husband, were complementary to them and were designed to equalize the holdings of each member of the family. The conclusion was, therefore, reached that Mrs. Lawton never had unfettered dominion over the shares purportedly given to her, but was completely amenable to her husband's wishes in the matter of their disposition. He had been president and general manager of the corporation prior to the time of the alleged gifts, and there is nothing in the record to indicate that his control was any the less after they had been made. It concluded also that after September 1, 1940, Mrs. Lawton and her two daughters were not partners (in reliance principally, if not altogether, on the Tower and Lusthaus cases, supra), because the gifts of stock to them being unreal, they contributed nothing to the capital of the business, and not participating in its management or control their contributions did not constitute "vital additional services."

 It is out of such gossamer threads of circumstance that the findings and conclusions of the Tax Court are woven, and it becomes our duty to determine whether findings and conclusions are based upon substantial evidence as that phrase has repeatedly been defined by the Supreme court, particularly in Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 198, 59 S.Ct. 206, 217, 83 L.Ed. 126, wherein it was said, "substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Conceiving the controlling question to be one of law, we are not presently concerned with the question whether review of the Tax Court's decisions is governed by the Administrative Procedures Act, 5 U.S.C.A.

§ 1001 et seq., adverted to in our case of Lincoln Electric Co. v. Commissioner, 6 Cir., 162 F.2d 379.

 The so-called "informality" of the stock transfers gives no support to a finding that they were a sham rather than a reality. Our holdings uniformly have been, in accord with prevailing authority, that a transfer of corporate stock upon the books of a corporation is a sufficient delivery. It not only passes title but evidences relinquishment of dominion and control over the subject matter of the transfer. Marshall v. Commissioner, 6 Cir., 57 F.2d 633; Bardach v. Commissioner, 6 Cir., 90 F.2d 323, 326. We sense the fact that the doctrine of stare decisis plays a lesser role in judicial controversy than once it did, but surely some consideration must still be given, even by taxing authority, to the dependence of persons in their business and financial arrangements upon adjudicated law. It may also be observed, if experience is of value, that had evasion of taxes been the compelling motive of the gifts, there probably would have been no informality in the stock transfers. True, the books and corporate records are not here, but the transfer is established by credible evidence having no aspect of unreasonableness. We are aware, of course, that the Tax Court is not required, at all events, to believe the testimony of witnesses, or even to accept at face value documents offered in evidence, but it appears to be well settled that the fact finder may not arbitrarily disregard undisputed and uncontradicted testimony of unimpeached persons where he has already found facts which lend a flavor of truthfulness to their assertions. Hughes v. Commissioner, 5 Cir., 153 F.2d 712; Bardach v. Commissioner, supra; Voltz v. Treadway and Marlatt, 6 Cir., 59 F.2d 643. As so well expressed by the late Judge Denison in Rookwood Pottery Co. v. Commissioner, 6 Cir., 45 F.2d 43, 45, "when the proofs so introduced remained unchallenged by contrary proofs or by destructive analysis, it was the duty of the commissioner to decide the issue in accordance with the proof then appearing before him; and it was, we think, the duty of the board to take the same view."

 · While there was no record evidence that the donees of the stock had exercised their voting rights, there was evidence that they were generally present at the meetings of the corporation, and certainly Mrs. Lawton, who as secretary of the corporation, signed the certificates and made her own assignments of her own stock, was entitled to credence that the transfers were reflected in the corporate records. No more pertinent evidence of dominion over the subject matter of a gift can be produced than a transfer of the gift to persons other than the donor. Why significance should be attached to the fact that her gifts to her children paralleled those of her husband as an indication that the stock remained under his complete dominion and control, is difficult to understand. Surely this is a non sequitur. Human experience would seem to teach, absent evidence to the contrary, that a mother's concern over the financial security of her children is as great as that of the father, if not, indeed, more so. There is no more reason to conclude that both gifts were dictated by him than that they were in response to her own insistence or suggestion to which he bowed, and the utilization of non-excessive profits to the needs of an expanding business is not so unusual or unwarranted as reasonably to warrant an inference that ostensible stockholders were not in reality its owners.

Finally, the picture that emerges from the record, if not, indeed, from the very Tax Court's evidentiary findings themselves, is that of a coordinated family enterprise, started in 1927 with negligible if any real capital, through the cooperative efforts of Lawton and his wife, into which were integrated the sons and daughters as they came from school and college, to the extent that their training and abilities became useful, growing, through their joint effort, into a sizable and prosperous industry. Starting with one employee it expanded to utilize hundreds. It would seem to be a strange conclusion that the progress of the corporation was due solely to Lawton's skill as a machine designer and not at all to the fact that he had his own loyal and dependable people in the office, accounting

and purchasing activities, so as to permit him to exercise, unhampered, the skills he had developed; and it would be strange, also, if in so coordinated a family activity, policies involving management, sales and expansion were not discussed and decisions made at the family fireside, in which all of the family stockholders of the corporation participated. In considering the income of the partnership to be due entirely to those who made the more technical mechanical contributions to the business, it would be arbitrary to overlook the fact that the realized gain and prosperity of the partnership were due in substantial measure to the building of the corporate business to which Mrs. Lawton, certainly, and her daughters, with almost equal certainty, contributed.

It must be noted that when the stock transfers were made in 1937, 1938 and 1939, there was no thought of dissolving the corporation and creating a partnership. Of a somewhat similar situation, in Boozer v. Com'r, 9 T.C. ——, the Tax Court said, "The case is unusual in that it does not involve a gift from the husband or brother, contemporaneous with and incident to the formation of the partnership, of the capital invested in the so-called partnership by the wife and sister." This is true in the present case, and constitutes one of the more important circumstances that distinguishes it from the Tower case, supra.

Tower does not decide that all family partnerships must be ignored for tax purposes. It adopts the definition originally given in Ward v. Thompson, 22 How. 330, 333, 334, 16 L.Ed. 249, "A partnership is generally said to be created when persons join together their money, goods, labor or skill for the purpose of carrying on a trade, profession, or business, and when there is a community of interest in the profits and losses." Here there was such community of interest; here the partners were to share in both profits and losses; mutual agency and obligation existed for all important purposes; here the presently excluded partners could have bound the partnership without limit, on notes and contracts; here there is no evidence that the distributive shares of partnership profits, other than his own, were used by Lawton to support his family, and his sons and daughters were adults with their own establishments. There is no evidence to support an inference that the successive gifts of stock in the corporation were a sham, and here was substantial effort by each of the partners in proportion to individual talent to promote the family enterprise.

It has been said times without number that "the legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355. This is surely not a mere euphemism to trap the unwary taxpayer. Tower does not reject that principle. "There can be no question," says the opinion, "that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes." [327 U.S. 280, 66 S.Ct. 537] We think this is such case. The gifts of stock made by Lawton to his wife and children and the gifts made by Mrs. Lawton, were valid, whether considered purely as gifts or in consideration of substantial services, and being valid Mrs. Lawton and her daughters made substantial contribution to the capital of the partnership and are, for tax as for other purposes, partners.

It must finally be observed that while the Tax Court held the gifts to the sons and Blakley to be invalid it recognized the recipients as members of the firm with interest therein measured, except in respect to Blakley's ten original shares, precisely by the allegedly unreal gifts of stock. This anomalous result undoubtedly springs from earnest effort to apply what is conceived to be, mistakenly we think, the full scope of the Tower rationalization.

The decision of the Tax Court is set aside and the case is remanded to the Tax Court for a recomputation of the tax in conformity herewith.