## WENIG v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9818.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 13, 1949.

Decided July 18, 1949.

Mr. Bernard J. Long, Washington, D. C. with whom Mr. Raymond J. Bowen, Washington, D. C. was on the brief, for petitioner.

Mr. Fred E. Youngman, Special Assistant to the Attorney General, with whom Mr. George A. Stinson, Special Assistant to the Attorney General, was on the brief, for respondent. Mr. Sewall Key, Special Assistant to the Attorney General, Mr. Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and Mr. John M. Morawski, Special Attorney, Bureau of Internal Revenue, Washington, D. C., also entered appearances for the respondent.

Before CLARK, PRETTYMAN and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition for review of a decision of the Tax Court of the United States. It is an income tax case and involves the familiar question of a family partnership. The D & W Metal Products Company filed a return for the fiscal year ended January 31, 1942, as a partnership composed of the petitioner and his wife. The Commissioner proposed to tax the entire income of the Company to the petitioner. The latter appealed to the Tax Court, and it affirmed the deficiency.

The case is governed by the decisions of the Supreme Court in Commissioner of Internal Revenue v. Tower,[1] Lusthaus v. Commissioner,[2] and Commissioner of Internal Revenue v. Culbertson,[3] the latter largely a discussion and application of the first two. It is unnecessary to attempt to

[1] 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135.

[2] 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679.

[3] 1949, 337 U.S. 733, 69 S.Ct. 1210.

restate those opinions. The Court made clear that there are no simple reagents for detecting partnerships. It emphasized that a partnership is a reality of both substantive interest and intent on the part of the purported partners, and that this reality of joint participation is the identifying feature of a partnership.

■ In approaching one of these problems, it is important to remember that the peculiarities which, in the general law of contract, liability, etc., distinguish a partnership from other forms of unincorporated joint venture, are immaterial in the income tax law. "Partnership" is defined by the Internal Revenue Code for income tax purposes and, as thus defined, includes any form of unincorporated joint venture.[4] So the sum of the matter is that if two or more persons have a real participation in a business or venture, and it is their real intent that the business or venture be joint, a "partnership" exists for income tax purposes. With these criteria in mind, we come to the facts in the case at bar.

■ The husband in this case came to the United States in 1921 at the age of 20, unable to speak the English language and without any business training. In the next six years he had about 30 different jobs and eventually was employed as a foreman in a metal box factory. In 1927 he married. Ruth Wenig was then 20 years old, a high school graduate, having taken a commercial course, and was employed as a billing clerk. Shortly after their marriage they discovered that they could not manage on his salary, and she suggested that he go into business on his own. He had no capital, and she pawned her engagement ring for about $350. With that money they bought some second-hand machines, which they repaired in the evenings after his day of work. Finally he established a place of business and gave up his job. She then got a job and used her earnings to operate the home. In his language, by doing this "she gave me a chance to exist". For a time there was another partner, a man who had worked at the box factory, but that lasted only a few months. During this time, Mrs. Wenig, at

night, did the paper work for the business, sending out bills and statements and keeping the books. The business did not succeed; another partner was taken in, but still it did not succeed. Wenig bought that partner out, the cash payment being $200 supplied by Mrs. Wenig. Finally an accident happened to a truck carrying some of the D & W merchandise, a judgment was obtained, execution was issued, and the business was sold at auction. Mrs. Wenig then supplied the money to repurchase the business. According to Mr. Wenig's testimony, "she gave it to me, with the strict understanding of no more partners for the D & W, except Mrs. Wenig herself, and we agreed to that at that time." This was in 1933. In 1937 they went to an attorney, who drew a partnership agreement, but that document was never signed.

The business of the D & W Metal Products Company was the manufacture of radiator covers for use in homes and showrooms. These covers were metal and at one time sold for $22.00 to $28.00. A wooden cover was on the market for half that price. Mrs. Wenig designed a new metal cover which could be put on the market at a price competitive with the wooden cover. In Mr. Wenig's language, "That is what made us successful." This was in the latter part of 1935 or the early part of 1936. The sales of the product promptly doubled, then tripled, then quadrupled, and in the fiscal year before us amounted to some $280,000.

The other principal product of the D & W Company was an undersink cabinet, the manufacture of which began in 1938. Mrs. Wenig helped design this cabinet. Sales of this product in the fiscal year herein involved amounted to about $200,000.

Mrs. Wenig also revolutionized the arrangements for painting the Company's products, so that there were less fumes and six or eight men could work in a place where only two had worked, and it was possible to reclaim the paint otherwise wasted in the process of painting by the spray method.

On February 1, 1941, the petitioner and Mrs. Wenig executed a formal partner-

[4] Int.Rev.Code § 3797(a) (2), 26 U.S.C.A. § 3797(a) (2).

ship document. There was, therefore, during the tax year here involved, an executed partnership agreement between Mr. and Mrs. Wenig. The books were set up on that basis from the date of the document.

There is no possible dispute concerning the reality of Mrs. Wenig's contributions to the business. Hers was the initial impulse to venture. All the capital contributions were hers, both upon the original investment and twice to rescue it from complete disaster. The inventive sparks which produced the products which yielded the profits were, in the one case wholly and in the other case partially, hers.

There is no possible dispute concerning the intent of the parties in and during the tax year involved in the case before us. On the first day of that year, they executed a formal instrument of partnership in unimpeachable technical terminology, and they reflected that unmistakable intention in the account books.

Moreover, the partnership intent was evidenced years before the tax year of the present case. The testimony was that in 1933, after two unsuccessful experiments with outsiders, Mrs. Wenig decreed, as she contributed the money to repurchase the business from an execution sale purchaser, that thenceforth there should be no partner other than herself. In 1935 Wenig informed the bank from which a loan was sought that Mrs. Wenig was his partner, and she signed a guaranty of the loan. In 1937 a lawyer drew for the Wenigs a formal partnership instrument and certificate. These documents were not executed, but the Wenigs explained the failure as being due to fear of disturbing observable signs of approaching success rather than to doubt or dispute as to their relationship.

The Tax Court found the facts substantially as we have outlined them. There was no conflict in the evidence. The court found that Mrs. Wenig made the contributions of both capital and services which are above described, but it concluded that the advances which she made were not by way of investments but were rather loans or gifts to her husband, and that her services were not in the capacity of a partner but were rather the services of a wife as-

sisting her husband. In effect, the Tax Court held that Mrs. Wenig made contributions, indubitably real, but that she made them to her husband, not to the business, and that her proprietary interest in the business in the fiscal year before us represented a return by him to her of that which she had originally given him.

The conclusion of the Tax Court rested in part upon a recitation in the agreement of February 1, 1941, between the parties, that as of that date the husband had transferred to the wife an undivided one-half interest in the business in consideration for love and affection "and other mutual interests." This "contemporaneous gift" from the husband, said the Tax Court, placed the case squarely within the rule of the Tower and Lusthaus decisions, supra. In further part, the conclusion of the Tax Court rested upon the view that the "services of Ruth Wenig were not managerial, nor were they other vital services of the character of a partner's services to a partnership." In further part, the conclusion rested upon a flat finding that the failure to execute the agreement prepared in 1937 was due to the fact that the husband was not doing and did not intend to do business in partnership with his wife at that time. Lastly, the conclusion rested in part upon the fact that the business property was in the husband's name.

We neither question nor depart from the findings of basic facts as made by the Tax Court. But we think its conclusions are not within the realm of legitimate inference from the record as a whole or from the specific facts found. The recitation of transfer in the agreement is no more than a careful draftsman's establishment of title. We find no basis of substance for deeming Mrs. Wenig's repeated, vital contributions of capital and services to be selfless donations. It is true, as the Tax Court observed, that a wife is interested in the success of her husband's business, as it provides the livelihood of the family, and it is also true that ideas of employees or friends may often be the source of substantial profit to the owner of the business. But those philosophical generalities cannot be taken to negative a property interest in a wife

who contributed all of the initial capital which was put into the business, who twice rescued the business from failure, and who alone designed one of the two products manufactured and sold and helped in material respects to design the other. An assumption that a wife wishes her husband success cannot deny her a property interest when her capital and her services are in major part the creative force from which the profits came. When a wife supplies the money with which her husband does business, some strong evidence is necessary to support a conclusion that she was not thereby a participant in the venture. We recall at this important juncture that we are not testing the technicalities of partnership under general commercial law; participation in any sort of joint venture is sufficient status. Assumption, without evidence, that a wife's contribution of money and ideas is merely wifely assistance to her husband as such, however justified a century ago, is outmoded as legitimate rationale. In respect to the conclusion that the husband did not intend in 1937 to do business in partnership with his wife, we find no evidence to support it.

The Tax Court said: "The issue is —who earned the income of this business?" We agree. But we see no possible escape from the conclusion that Ruth Wenig's initiative, capital, inventiveness and inventions, with Irving Wenig's labor and management, earned the profits. The record requires a conclusion of joint venture. That this was their intent is established by direct testimony, by circumstance, and by the only permissible inference from the basic facts. To infer that she first contributed, donatively, capital and services to him; that he thereafter gave her, donatively, an interest in the venture; and that, therefore, she was not and did not become. a

real participant in the venture, is against the clear content of the record. It is not permissible inference from the facts shown.

It follows that the judgment of the Tax Court must be reversed.[5] The case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

[5] Singletary v. Commissioner, 5 Cir., 1946, 155 F.2d 207; Durwood v. Commissioner, 8 Cir., 1947, 159 F.2d 400; Wilson v. Commissioner, 7 Cir., 1947, 161. F.2d 661; Simmons v. Commissioner, 5 Cir., 1947, 164 F.2d 220; Lawton v. Commissioner, 6 Cir., 1947, 164 F.2d 380; Weizer v. Commissioner, 6 Cir., 1948, 165 F.2d 772; Woosley v. Commissioner, 6 Cir., 1948, 168 F.2d 330; Canfield v. Commissioner, 6 Cir., 1948, 168 F.2d 907; Kent v. Commissioner, 6 Cir., 1948, 170 F.2d 131; Hartz v. Commissioner, 8 Cir., 1948, 170 F.2d 313; Walsh v. Commissioner, 8 Cir., 1948, 170 F.2d 535; Graber v. Commissioner, 10 Cir., 1948, 171 F.2d 32.