## MILLER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11003.

United States Court of Appeals Sixth Circuit.

June 2, 1950.

Lee C. McCandless, Butler, Pa., Lee C. McCandless, Butler, Pa., on brief, for petitioner.

S. Walter Shine, Washington, D. C., Theron Lamar Caudle, Ellis N. Slack, Robert N. Anderson, and S. Dee Hanson, all of Washington, D. C., on brief, for respondent.

Before MARTIN, McALLISTER, and MILLER, Circuit Judges.

248

McALLISTER, Circuit Judge.

Petitioner, Sam H. Miller, appeals from a decision of the Tax Court holding that he and his wife were not partners in a business enterprise so as to be recognized as such for income tax purposes; that they were not equal partners with certain trusts, claimed to be partnership interests, established for their children; and that petitioner was not entitled to a deduction for a loss on a pedigree dog purchased and used for breeding purposes.

The factual background of the case is as follows: Petitioner and his wife, Florence R. Miller, were married June 26, 1929, and in 1941, at the time they filed the separate tax returns which resulted in the present controversy, they had three children. Prior to his marriage in 1929, Miller, who had graduated from college with a degree in engineering, determined, because of bad eyesight, not to follow that profession, but to enter the drug business. He became a drug clerk; acquired outright ownership of what was described as "a drug store in failing financial condition" in Warren, Ohio; and became a part owner of two drug stores in Youngstown, Ohio. Before her marriage, Mrs. Miller had worked in stores in the sale and merchandising of toilet goods, cosmetics, and feminine hygiene items. She had been a trained beauty technician. Even before the parties were married, she had been working with her fiance at the Warren store, on Sundays, and through her efforts, had helped "to pull the Warren store out of the red." By 1934, petitioner was operating five stores under the name of S. H. Miller & Company, later changed to Miller's Cut Rate Drugs, and capitalized at $42,000. In that year, petitioner made a gift to his wife of a one-half interest in the company, for the purpose of establishing a partnership with her; and a gift tax return, with the donee's consent, was filed, with a valuation of $21,000 on the gift. The Commissioner, however, refused to recognize the gift or the partnership until 1936. In that year, petitioner and his wife drew up articles of copartnership, which were presented to the Commissioner; and the earnings of the business were thenceforth reported on partnership returns from 1936 to 1940, which the Commissioner did not question. The taxes in controversy are income taxes for the year of 1941.

During the period from 1936 to 1941, the business continued to expand and to increase its earnings. Six new drug stores were added to the chain, and earnings increased from $20,000 in 1936 to more than $34,000 in 1941. During this period, additions of capital to the business were made by both the petitioner and his wife in substantially equal amounts. The wife also made payments on company indebtedness to companies controlled by petitioner's father and brother, although she herself was not legally subject to liability on the loans; and new obligations to these creditors were assumed and signed by Mrs. Miller. The payments made by Mrs. Miller on the indebtedness of the company matched payments made by petitioner. Most of the earnings of the business were added to capital and expansion.

In December, 1940, and January, 1941, the petitioner and his wife created twelve trusts for the equal benefit of their three children. All of the trusts created by petitioner and his wife were created from their existing interests in the business. In January, 1941, William R. Miller, the petitioner's father, created three additional equal trusts for the children, with substantially the same provisions as the trusts created by the petitioner and his wife. The purport of the fifteen trusts was to divide the business between the petitioner and his wife and the three children, who were considered partners through the trustees, so that each member of the family was credited with a one-fifth interest in the business, and a corresponding one-fifth of the earnings of the business, which was conducted just as it had been before.

In addition to the foregoing, petitioner claimed a deduction for a loss sustained in the operation of a kennel.

The Tax Court held that petitioner and his wife were not partners for income tax purposes; that the trusts established by petitioner and his wife for their minor children were not partnership interests; and that petitioner did not establish a loss on his

claim for a deduction. The Tax Court further found that the trusts established by petitioner's father for the children resulted in valid partnership interests. From the decision of the Tax Court, petitioner appealed.

We come, then, to the principal issue: whether, for income tax purposes, all of the income of Miller's Cut Rate Drugs was, under the circumstances disclosed, properly taxable to the husband alone, or whether it was to be divided between the husband and his wife.

Petitioner contends that his wife, Florence R. Miller, invested her independent capital in the business; that she contributed substantially to the management and control of the business; that she performed other vital services; and that the arrangement met the requirements of a valid family partnership.

At the outset of its opinion, the Tax Court quoted from the opinion of the Supreme Court in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 537, 90 L.Ed. 670, 164 A.L.R. 1135, as follows: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. Int.Rev.Code §§ 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws."

The latest pronouncement of the Supreme Court on the subject of partnerships under the income tax law is found in Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 1212, 93 L.Ed. 1659, which was decided subsequent to the decision of the Tax Court in the instant case. In the Culbertson case, the Supreme Court, in reversing a decision of the Tax Court on a question of a family partnership under the income tax law, observed that "The Tax Court read our decisions in Commissioner v. Tower, supra, and Lusthaus v. Commissioner, [327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679], supra, as setting out two essential tests of partnership for income-tax purposes: that each partner contribute to the partnership either vital services or capital originating with him. * * * It treated as essential to membership in a family partnership for tax purposes the contribution of either 'vital services' or 'original capital.' Use of these 'tests' of partnership indicates, at best, an error in emphasis. It ignores what we said is the ultimate question for decision, namely, 'whether the partnership is real within the meaning of the federal revenue laws' and makes decisive what we described as 'circumstances (to be taken) into consideration' in making that determination." The court continued: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case * * *." The court then proceeded to announce the rule that the test whether a family partnership is a real partnership for income tax purposes is "whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person, acted. * * * Whether the parties really intended to carry on business as partners is not, we think, any more difficult of determination or the manifestations of such intent any less perceptible

than is ordinarily true of inquiries into the subjective."

With these criteria before us, we come to the consideration of the circumstances surrounding the parties' conduct, their business abilities, contributions, agreements, and whatever facts may throw light upon their true intent.

Inasmuch as the case turns upon the facts in their entirety, we review them in some detail. The record reveals that Mrs. Miller had been trained as a beauty technician and was experienced in selling toilet goods in a leading department store. Except for the time when her infant children required her care, her testimony shows that she was either helping with the personnel in the stores, or was with her husband continuously on out-of-town trips, looking for new locations of stores and attending merchandise shows and displays. Petitioner testified that he consulted with his wife every single day about the details of the business; that this commenced before 1934, the year in which he gave her a one-half interest; that from 1936 on, his wife took a very active part in the operation of the business; that she would go from town to town, often by herself, and at other times with petitioner and the general manager of the stores, inspecting locations in Ohio, Pennsylvvania, and New York; that petitioner and his wife, when they had found a vacant place where a drug store might be opened, would proceed to count the number of drug stores in the city; that they would "shop" the stores and look over their merchandise with a view to judging whether a new store might be successfully operated by them in such place; that they would inspect the various department stores, which were competitors in many lines with drug stores, in order to see generally whether it was worthwhile to open a drug establishment as a competitor with such stores; that, together, petitioner and his wife would check and count traffic in the various streets; that one would count men shoppers and the other, women shoppers; that they would ascertain from which direction the shoppers came, how near the main shopping street would be to the various loca-

tions, as well as the main feeder streets, and how many people would pass by the door of a given location during a day. Mrs. Miller testified that in her examination of the condition of the stores, she would commence her inspection at the front door, and if the windows were not clean, she would immediately inform the manager; that she would see that the stock in the stores was properly arranged, and if there were any mistakes in this regard, she would correct them. She also gave intructions as to seasonal arrangements; told the clerks how to greet customers; and checked to see that the shelves and the stock were clean. She also ascertained why certain employees were not fulfilling their duties of cleaning their sections of the store; she checked all invoices and purchase slips; and would inform the manager what she thought was wrong in this or that store. She also took part in employees' meetings, taught the girls the manner of meeting customers, and told them how they should suggest the purchase of merchandise. She also signed all checks for payment of accounts owing by the firm after inspection of the merchandise. Other witnesses testified that she frequently drove trucks of merchandise from the main supply store to the other stores in different cities, making delivery of such merchandise during rush periods.

With respect to the personnel of the stores, petitioner testified that he and his wife together made the decisions as to the hiring of the chief employees of the firm, and from then on, such principal employees had wide authority to hire or discharge as they saw fit. He declared that his wife was the one who determined upon the employment of Mr. Milne as general manager for all of their stores at the beginning of their growth. In addition, she visited the stores from time to time, advising the employees to see that the stores were kept clean and the merchandise fresh, and gave instructions on window trimming and similar matters. With regard to the use by employees of merchandise, Mrs. Miller made a check on all such matters each week-end.

The articles of copartnership were filed in Youngstown, Ohio, as of January 1,

1937, and recited that the petitioner and his wife each owned a one-half interest in the business by virtue of a partnership agreement dated January 1, 1934, and under which they had previously been doing business. They provided that all leases became binding on the partnership, that profits and losses were to be shared equally, and that the control of the business was to be equal. Mrs. Miller jointly executed the leases for the various stores, and signed the signature cards for partnership accounts in twelve different banks, with the right, as a partner, to withdraw the funds from such accounts. Mrs. Miller's income from the partnership could be used by her in any way that she desired; there was no obligation upon her to put it back into the business. There is no evidence that petitioner dominated the partnership. The actual management of the business was confided to the general manager who had, from the inception of the enterprise, large powers of management, and of hiring and discharging employees. In accordance with the state law, petitioner and his wife, at the commencement of their partnership, posted notices on the doors of all the stores, notifying the public that they were operating the business as copartners. One wholesale druggist testified that he had to have all orders from the Miller Company approved by Mrs. Miller; that she and her husband often drove to Buffalo, New York, to visit the wholesale salesrooms; and that Mrs. Miller was the only wonan who attended such displays. The testimony of the Millers was variously corroborated by eight other witnesses, including wholesale druggists, owners of other drug stores, drug salesmen, and employees of the Miller Company.

Respondent offered three witnesses. One was a former general manager, Milne, who admitted that he had been discharged under "very embarrassing" circumstances. He conceded that he bore "ill feeling" toward the Millers, but stated that "I don't think there is ill feeling enough to which I would attempt to prejudice myself. * * * Naturally, any discharged employee might be a disgruntled employee." He denied that he ever saw Mrs. Miller in the Warren store where she testified she had instructed the sales girls, checked the cleanliness of the store, and inspected the shelves and the appearance of the merchandise. A disinterested witness, a former clerk at the store under Milne's supervision, testified, however, that Milne, on one occasion, when Mrs. Miller was in the store, remarked that "he wished Mrs. Miller would keep her nose out of the business;" and this testimony was not thereafter disputed. Milne later qualified his prior statement by saying that he never saw Mrs. Miller in the store, except that she would "drop in while she was shopping and leave her children to run around the store." He "presumed" that she did not check the sales records; and in response to a question by counsel for petitioner, he admitted that his recollection might be poor. Contrary to practically all of Milne's testimony, the Tax Court, on this point, found that Mrs. Miller did make visits to the stores for business purposes. The two other witnesses for respondent were also employees who had been discharged by the Millers. They, like Milne, covered, in their testimony, only a slight and fragmentary portion of the facts testified to by the ten witnesses supporting petitioner's case; and their evidence could not be characterized as affirmative or certain, but rather, as negative, inconclusive, doubtful, and of no weight on the principal issue; and this was emphasized by the witnesses' lack of knowledge, and inability to remember the important circumstances bearing on the issue. Milne did not know that Mrs. Miller was the one who originally decided upon having him employed as the general manager of the stores. None of respondent's witnesses could have had any knowledge of the many trips made by the Millers, checking traffic and shopping in other cities, or of Mrs. Miller's services in going over the invoices in her home, where all of this work was done. They knew nothing whatever of the financial situation of the company, nor of Miller's complete confidence in his wife's financial judgment and advice, which was proved by disinterested testimony. From the time of the execution of the partnership agreement be-

tween petitioner and his wife, the assets of the business tripled in value during the period 1934 to 1940, from $42,000 to $120,000.

▌ Assuredly, this court on review does not weigh the evidence, or pass upon the credibility of the witnesses. Those are the functions of the trier of the facts, and for it alone. It is only when there is no substantial evidence to support the findings and decision, or on errors of law, that a reviewing court may act to set aside a decision of the Tax Court.

▌ We find, however, no substantial evidence to support the conclusion that Mrs. Miller was not the owner of a capital interest in the partnership, and that she made no contribution of services of sufficient importance to constitute her a partner in the business. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. et al. v. National Labor Relations Board, et al., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126. It was, however, not upon substantial evidence of the intention of the parties that the case was decided, but on the basis of certain "tests." From a consideration of the opinion of the Tax Court, it appears that, as in the Culbertson case, it treated as essential to membership in a family partnership for tax purposes, the contribution of either "vital services" or "original capital." This made decisive what the Supreme Court described only as "circumstances" to be taken into consideration. Such seems to be the purport of the Tax Court's statement that "The funds which the petitioner's wife claims to have contributed to the business all originated with her husband either as direct gifts from him or as diversions of income from the business." The Tax Court continued:

"There is no evidence that she invested in the business at any time any capital originating with her. Transfers to the wife of a partial interest in the husband's business are not investments of new capital. Commissioner v. Tower, supra, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679.

\*　\*　\*　\*　\*　\*

"His wife's contributions of ideas and services, while undoubtedly of some value to the business, were not of the nature or of sufficient importance to constitute her a partner in the business."

Throughout the opinion, emphasis is placed upon these "tests." Nowhere is found any conclusion as to whether or not the Millers, in good faith and acting with a business purpose, intended to join together in the conduct of the enterprise—the true test of a valid family partnership. It seems clear that the decision of the Tax Court was based upon the assumption that there could be no valid family partnership for income tax purposes unless there was a contribution of original capital by the wife or the contribution by her of vital services.

▌ As Judge Simons pointed out in Lawton et al. v. Commissioner, 6 Cir., 164 F.2d 380, a family partnership for income tax purposes is to be judged in the light of partnerships in general, according to the definition given in Ward v. Thompson, 22 How. 330, 16 L.Ed. 249: "A partnership is generally said to be created when persons join together their money, goods, labor or skill for the purposes of carrying on a trade, profession, or business, and when there is a community of interest in the profits and losses." In the Lawton case, and in Kent v. Commissioner, 6 Cir., 170 F.2d 131, this court reversed decisions of the Tax Court and upheld the validity of family partnerships for income tax purposes, although, in those cases, the wife's capital contribution to the partnership was received as a gift from the husband. This was in keeping with what the Supreme Court said in the tower case, to the effect that there was no reason why the general concept of a partnership that rules in ordinary commercial-law cases "should not apply in tax cases where the government challenges the existence of a partnership for tax purposes." Commissioner v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 536, 90 L. Ed. 670, 164 A.L.R. 1135. The same view was also emphasized by Mr. Justice Frankfurter, in his concurring opinion in the Culbertson case, where he observed that the test of a valid family partnership for tax purposes should be the same as the test for

any partnership regardless of the involvement of income tax, namely, that the controlling consideration is whether the parties intend to join in a business venture. Accordingly, there seems to be no reason why a husband's irrevocable gift to his wife of a partnership interests should not make her a partner even though she contributes no services. The determining question is whether the husband and wife really intend to carry on the business as copartners, Wenig v. Commissioner, D. C. Cir., 177 F.2d 62; Greenberger v. Commissioner, 7 Cir., 177 F.2d 990; Ginsburg v. Arnold, 5 Cir., 176 F.2d 879. See also the recent decisions of the Tax Court since the decision in the Culbertson case. O. H. Delchamps, 13 T. C. 281; Edward A. Theurkauf, 13 T. C. 529.

 We find the evidence to be clear and convincing that the Millers, even before their marriage, were working together in the drug business; that Mrs. Miller at all times contributed substantial, valuable, and vital services; that her husband gave her a half interest in the business because of her services and because he felt that she was entitled to it; and that this half interest constituted her share of the business, which the parties intended, in good faith, to carry on, as partners, and did carry on as a valid partnership. Lawton et al. v. Commissioner, supra; Weizer v. Commissioner, 6 Cir., 165 F.2d 772; Kent v. Commissioner, supra; Henson v. Commissioner, 5 Cir., 174 F. 2d 846. There is no substantial evidence to support a finding to the contrary.

As to the Tax Court's finding that the services contributed by Mrs. Miller were those of a wife who desired to help her husband, we concur in the view expressed in Wenig v. Commissioner, D. C. Cir., 177 F.2d 62, 65, where it was said: "Assumption, without evidence, that a wife's contribution of money and ideas is merely wifely assistance to her husband as such, however justified a century ago, is outmoded as legitimate rationale." There is still an attachment to the old common-law idea that husband and wife are one, and that one, the husband.[1] A number of states as yet refuse to recognize a business partnership of husband and wife. To some people, the idea of having a wife carry on a business as a partner of her husband seems incredible and to be explained only as some kind of a deception. What might be found as to the intention of a husband and wife to operate a business as copartners could conceivably be colored by unconscious attitudes as to woman's place in society or views as to the marriage relationship.

We come, then, to the question of the trusts established by the Millers for their minor children. On December 31, 1940, petitioner and his wife entered into a trust agreement, setting over to themselves, as trustees, a one-fifth interest in each of their respective half interests in the partnership valued at $120,000. Each of the trustees, therefore, purported to place an interest in trust for each of the three children—six trusts in all—valued at $4,000 each. On January 17, 1941, petitioner's father also be-

---

1. Under the common law, husband and wife become by marriage one person, and the entire legal existence of the woman is completely merged or incorporated in that of her husband. Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180, 30 L.R.A.,N.S., 1153, 21 Ann.Cas. 921. "By the principles of the common law, a married woman can, in general, do no act to bind her; she is said to be sub potestate viri, and subject to this will and control. Her acts are not like those of infants, and some other disabled persons, voidable only; but are in general, absolutely void ab initio." Elliott v. Peirsol, 1 Pet. 328, 26 U.S. 328, 7 L.Ed. 164. At common law, a husband has an absolute right to all of the earnings of his wife, and to all of the property she owned at the time of her marriage. Jackson v. Jackson, 91 U.S. 122, 23 L.Ed. 258. An exception in her favor nevertheless exists when the husband has deserted his wife and left the state. She is then permitted to use the money she has earned by her own labors. Arthur v. Broadnax, 3 Ala. 557, 37 Am.Dec. 707. However, the Married Women's Acts, of comparatively recent times, generally enable a married woman to carry on a separate business, or perform services on her own account, and entitle her to the return and profits of such business or earnings as her own property.

came the donor of trusts by investing $15,000 in the company, in exchange for which, trust interests were established for the children, with petitioner and his wife named therein as trustees. The trusts for the children established by petitioner's father brought $15,000 additional capital into the business, and as to them, the Tax Court held that they resulted in partnership interests.

Petitioner, his father, and his wife testified that they had discussed among themselves all of these trusts for a considerable time before they were established and before the elder Miller invested his money for the benefit of the children. The Tax Court held that "the rule that the transfer to a wife of a partial interest in the husband's business does not constitute her a partner also applies to transfers of partial interests to trusts for their children." It further observed that no new capital came into the business as the result of the trusts established by petitioner and his wife; that such trusts did not make a substantial contribution to the control and management of the business; and that the trusts did not perform other vital services. This seems, again, to be making decisive what the Supreme Court mentioned were merely circumstances to be taken into consideration in determining the intention of the parties. The Tax Court continued:

"Some recent cases have upheld family partnerships for tax purposes with slight contributions of capital and services by the alleged family partners where it was found that the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. However, in each of those cases there was a real need for the family partner in the firm and a real intention that he be an actual partner in the firm. This case is clearly distinguishable on its facts from those cases because here the petitioner had no need or obligation to make his wife and children partners in his business, and there was no benefit to the business in making them partners, other than the capital contributions made by William R. Miller."

■ The test, of course, is not whether there is a need or obligation on the part of a businessman to make his wife and children partners in his business, or whether any benefit results to the business. Again, these are only circumstances to take into consideration in ascertaining intention. In Harris v. Commissioner, 10 T. C. 818, the Tax Court, prior to the decision of the Supreme Court in the Culbertson case, held that where a husband and wife, doing business as copartners, gave an undivided one-sixteenth interest in the business to each of their two children, and neither child contributed any capital originating with himself, and performed no services in the business, the children did not thereby become copartners. On review, the decision was reversed and the case remanded for further proceedings in conformity with the opinion of the Supreme Court in the Culbertson case. Harris v. Commissioner, 9 Cir., 175 F.2d 444.

Counsel for respondent argue in their brief that the Tax Court found there was no evidence of any real intention to make the children partners in the business. This is incorrect. The Tax Court made no finding as to intention with respect to the trusts. It appears from the instruments which established the trusts for the children in 1940 and 1941, that petitioner and his wife, as trustees, were given powers to control the trust interests in the business as though the trustees were the sole owners of such interests; to control the management and investment of the trust funds; to make other investments from either principal or income at their discretion; to withdraw whatever compensation, as trustees, they saw fit up to the full amount of the annual income. The trust agreement also provided that all additional trust income was to be added to principal, with no distribution to the children until the dissolution of the trusts, which was to occur when the youngest surviving child reached the age of twenty-five years, and after the death of the petitioner.

■ The grantor of a trust remains taxable on the trust income where the benefits, directly or indirectly retained by him,

blend imperceptibly with the normal concepts of full ownership. United States v. Morss, 1 Cir., 159 F.2d 142. In the instant case, the rights retained in the trusts by the Millers enabled them to continue to use the corpus and income of the trusts in the business exactly as though they were owners, without the right of the beneficiaries to receive any distribution until the termination of the trusts after the death of petitioner; and petitioner and his wife could take for themselves all the income of the trusts, until their termination, for their compensation as trustees. Counsel for respondent submits that under such circumstances, it could reasonably be considered that the benefits in the trusts, directly or indirectly retained by the petitioner and his wife, blended imperceptibly with the normal concepts of full ownership, and that, therefore, the transfer to the children of real partnership interests was not intended. The argument is persuasive, but in the absence of findings on this proposition, it will be necessary to remand the case as in Culbertson v. Commissioner, supra, for a decision as to whether there was an intent to transfer the interests to the children or whether the arrangement merely multiplied, in form, a single economic unit without effecting a change in economic status of the Millers. See Eisenberg v. Commissioner, 3 Cir., 161 F.2d 506. In this connection, as proof of intent, petitioner refers to the execution of an instrument in which, among other provisions, he and his wife relinquished their rights to compensation for services as trustees, and petitioner resigned as trustee in the trusts he had established, consenting to his wife's appointment as trustee therein, and she did likewise in the trusts which she had established. Whatever slight change in the trusts resulted from this document, the fact is that it was not executed by petitioner and his wife until December 27, 1944, and its effect is negligible as bearing upon their intent in 1940 when the trusts were established.

Finally, petititioner claimed a loss in the operation of a kennel, particularly in respect of a prize dog which proved to be unsatisfactory for breeding purposes. The Commissioner disallowed the deduction on the ground that the operation of the kennel was a hobby and not a business. The Tax Court sustained the determination of the deduction without deciding whether it was a business or a hobby, disallowing the loss because of petitioner's failure to support the deduction with adequate proof as to actual loss. Petitioner claimed a net loss computed on the cost of the dog, less stud fees; but he afterward sold the dog. He was unable to state whether the sale took place during the taxable year of 1941 or 1942. The amount of the loss was, therefore, not established, and there was no proof of any closed or completed transaction fixing the claimed loss as actually sustained in the taxable year of 1941. From the evidence in the record, it can not be said that the Tax Court's decision sustaining the Commissioner's determination was erroneous.

In consideration of the foregoing, the decision of the Tax Court is reversed with respect to the determination that the petitioner and his wife were not members of a valid family partnership for income tax purposes; the disallowance of the deduction for loss of operation of the kennel is affirmed; and the case is remanded for decision on the question of the trust interests established for the minor children as hereinbefore set forth.