**SINGER v. SHAUGHNESSY, Collector of Internal Revenue.**

Civ. A. No. 3632.

United States District Court
N. D. New York.

March 30, 1951.

Smith & Sovik, Syracuse, N. Y., for plaintiff. Laurence Sovik and William Mackay, Syracuse, N. Y., of counsel.

Irving J. Higbee, U. S. Atty., Syracuse, N. Y., for defendant. Elizabeth Davis, Washington, D. C., and Edmund Port, Asst. U. S. Atty., Syracuse, N. Y., of counsel.

FOLEY, District Judge.

This complex action is based upon claims for refund of substantial federal estate taxes paid under proper protest to the defendant commissioner. It was tried be-

fore this Court and a jury, and in order to simplify the various factual problems created by the evidence and to assist the jury to intelligently separate and decide the issues, nine questions in writing were submitted, requiring categorical answers. This procedure was in accordance with Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and this method, at the suggestion of the Court, was agreed upon by the attorneys, and their assistance was given in the formulation of the questions submitted. Seven of the questions were answered in favor of the contentions of the plaintiff. Question No. 8 was a finding of fair market value of the business in the amount of $275,000, which was substantially below the figure in that respect determined by the commissioner, but that finding is not challenged by the defendant commissioner. In its wisdom, and without any instruction by the Court or indication in the writing submitted, the jury did not answer "Question No. 2", and it is evident from the reading of Questions "1" and "2" that the affirmative answer to the first question disposed of any answer to the second question. The jury by its own initiative reached this sound conclusion without any realization by the learned Court and the learned attorneys of this obvious situation.

The Court reserved decision upon questions of law and any remaining issues of fact. Decision was also reserved upon the motions of the defendant made for a directed verdict at the close of the plaintiff's case, at the close of the evidence, and after the return of the special verdict, together with the motion of the defendant at that time of rendition to set aside the special verdict as contrary to the weight of the evidence. I must now decide these important motions in relation to the special verdict, and it should be noted that the motions are pressed and briefed by the defendant with striking clarity, force and sincerity.

The testimony of Frances A. Singer unfolded a remarkable marital and business relationship with her husband, Leland W. Singer, from the time of their marriage on July 24, 1926, until his death on August 21, 1944. She told about her own background of teaching and supervising in various schools and the meeting with her husband in 1925 when he was a salesman for the Southwestern Publishing Company. She then traced extensively the beginning of her contact after her marriage with the L. W. Singer Co., a publishing company of grade school text books, owned by her husband, from its humble beginning of one room and one part-time employee and small inventory and funds to the flourishing business it was in 1944 at the time of his death, and still is today. There is no question from the evidence but that her teaching background, resourcefulness, ingenuity, intelligence, tact, energy, tireless and long daily efforts throughout the years, her ability to learn and progress in the trade, blended to play a major part in the establishment of the L. W. Singer Co. among the leaders in its field. The amazing financial growth of its sales volume and income throughout the years is another tribute to our American system, and the familiarity of Mrs. Singer in her testimony with the financial affairs of the company also demonstrated she was the guiding hand in this phase of the business. There was a mutual confidence, respect and trust which was complete and unqualified by these two people in the conduct of the business of the L. W. Singer Co.

The defendant does not discount these facts, but argues that at the most they evidence a marital relationship and family arrangement and give little, if any, support to a business partnership now claimed to have existed throughout the years between these two persons in reference to the business activities of the L. W. Singer Co. It is vigorously contended that the evidence does not show any understanding, agreement or meeting of the minds that they intended to conduct a partnership or be partners in the strict legal and commercial sense of that term.

It is true that Mrs. Singer in her testimony denied there was an explicit understanding and agreement with her husband at the time of her marriage, when she ceased her employment as a teacher and became active in the L. W. Singer Co., that one-half of the profits derived from

the business would belong to her. Her testimony lent little support to the legal conclusion and allegation in the complaint that she agreed with her husband to promote and develop the business then owned and operated by him, "with the understanding and agreement that one-half of any of the profits derived therefrom would belong to Frances A. Singer." This attitude on her part was similar to her complete honesty and candor throughout her testimony in describing her business relationship and activity with her husband.

However, although she denied a precise and definite agreement as to actual division of profits, she told about conversations with her husband at the time of her entry in the business, that, "whatever we make in this business we ought to leave in the business to expand it. We won't draw any salaries, I won't draw any salary, you won't draw any salary." Then she gave her impression: "It was our business. I thought it was as much my business as much as his business." Then, as the business grew, the statement by her husband that, "We will leave the money in the business and then we will draw it out and invest it." Through the years, these two trusting people did invest the profits from the business in real estate, stocks, bonds, miscellaneous property, all taken in their joint names, and also in joint saving and checking accounts. Even dividends and various income returns from joint investments were carefully deposited in the joint accounts.

The activity of Mrs. Singer in the conduct of the business and the placing of the profits of the business in a safe at their home or in joint accounts or investments is absolutely clear from the evidence. There was strong evidence to the contrary concerning the intent of the parties as to their relationship in the business. Partnership returns were not filed until 1944 when the parties entered into a formal partnership agreement. Separate returns were filed from 1938 to 1943, and Mrs. Singer reported salary from the L. W. Singer Co. during those years and Singer described himself as sole proprietor. In confidential bank statements through the

years, including the year 1944, Singer listed himself as sole owner of L. W. Singer Co. In one statement he answered, "No," to the written question whether he was a partner in any firm. The signature cards in the bank described Singer as the sole owner, and a power of attorney authorized Mrs. Singer to draw upon the partnership account. The assumed-name certificate filed in 1923 set forth Singer as the sole owner of the L. W. Singer Co. The most disturbing evidence involved the act of Mr. and Mrs. Singer in executing the partnership agreement in 1944, formally stating that for twenty years Singer *owned and operated* a business and Mrs. Singer had been associated therein as an employee. Singer played little part in the consultation and drafting of this agreement. It was hastily drawn, under the impetus of seeking a method to escape the tax burden. It is too bad that it did not correctly state the true relationship of the parties, but in my judgment such failure should be attributed to the draftsman and not to the Singers who, in all their intelligence, like many of us, knew little concerning the intricacies of the income tax laws. In any event, the Singers gave little thought to the document, and their conduct in reference to it shows an abhorrence on their part that the law should necessitate a formal writing after so many years of trust and confidence. It is a sad situation in a court of law to have an honest laywoman testify that a legal writing does not mean what it says and does not reflect the true situation as it existed. The filing of the original estate tax return and various gift tax returns by Mrs. Singer, in her legal capacity as executrix, in which she did not claim any interest in the money used to purchase certain real and personal property now in question, obviously was done solely under the guidance of legal advice.

The commissioner included the full value of the joint properties in computing the gross estate of the deceased, Mr. Singer. Under section 811(e), I.R.C., 26 U.S.C.A. § 811(e), he shall not include "such part thereof as may be shown to have originally belonged to such other person and never

to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth." It is my belief that if an original, bona fide partnership is established with an agreed division of profits, then if the money is traced into the joint properties, it would be a showing that part of the interest belonged "originally to such other person." The application of this partnership theory to this section of the Internal Revenue Code regarding estate tax is not new in the courts. Berkowitz v. Commissioner of Internal Revenue, 3 Cir., 108 F.2d 319; Rogan v. Kammerdiner, 9 Cir., 140 F.2d 569. It seems to me that the partnership principles relating to income tax problems equally apply to this estate tax problem; at least, I can find no authority to the contrary.

The vital question, therefore, to be determined in this phase of the case is whether the evidence justified the finding by the jury that a valid partnership agreement existed between Mr. and Mrs. Singer in the conduct of the L. W. Singer Company from 1926 to 1944, and, more seriously, whether under the evidence as a matter of law a judgment n. o. v. should be directed for the defendant.

 In considering the legal import of the evidence in respect to the claimed partnership, broad principles to be applied to the disposition of such factual problems are contained in Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. The Culbertson opinion was written to clarify the previous Lusthaus and Tower opinions. It restated the principle enunciated in the Tower case "that the question whether the family partnership is real for income-tax purposes depends upon 'whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their "agreement, considered as a whole, and by their conduct in execution of its provisions." ' " 337 U.S. at pages 741, 742, 69 S.Ct. at page 1214. This opinion emphasizes throughout that the true intent of the parties must be determined by the triers of the fact from *all the facts* (emphasis mine). It is repeatedly stated therein that the circumstances and agreement must be considered as a whole, and no one circumstance in the claimed relationship of the parties can be isolated as an essential of membership in a family partnership. It is true that in these authorities there were precise oral and written agreements of partnership, but, in my judgment, any definiteness in that respect is not alone to be considered controlling any more than "original capital," or "participation in control and management" should be so considered.

There have been some interpretations by the various courts of appeal of these principles as they apply to certain situations. In Morrison v. Commissioner, 2 Cir., 177 F.2d 351, 352, it was stated that the issues as to genuine partnership "are purely issues of fact." Much more significant to the factual situation here are Weizer v. Commissioner, 6 Cir., 165 F.2d 772; Eckhard v. Commissioner, 10 Cir., 182 F.2d 547; Wenig v. Commissioner, 85 U.S. App.D.C., 216, 177 F.2d 62. These authorities are closely in point and the factual situations are generally similar.

In the Wenig case, supra, 177 F.2d at page 63 it was stated, and to me the reasoning is persuasive: " 'Partnership' is defined by the Internal Revenue Code for income tax purposes and, as thus defined, includes any form of unincorporated joint venture (I.R.C. 3797(a)(2), 26 U.S.C.A. § 3797 (a)(2). So the sum of the matter is that if two or more persons have a real participation in a business or venture, and it is their real intent that the business or venture be joint, a 'partnership' exists for income tax purposes."

 In the light of these persuasive authorities, the general principles enunciated clearly by the Supreme Court as herein discussed to be used as a guide in the disposition of the factual issues by the triers of the fact, the broad and un-

usual definition of "Partnership" as defined in the Internal Revenue Code, there is no legal basis in my judgment to justify the direction of a verdict for the defendant on the particular issue of partnership here, nor likewise for these considerations can I conscientiously rule that the finding of partnership by the jury, the triers of the fact, is against the weight of the evidence although there are some disturbing elements in the testimony on the question of true and genuine intent.

The finding of the jury in its special verdict, that the gifts of annuity policies issued by the Connecticut Mutual Life Insurance Company were absolute, complete and effective gifts not made in contemplation of death, are in my opinion supported sufficiently by the evidence and should not be disturbed.

As stated previously, the defendant does not move against the valuation of the business at $275,000, but the plaintiff, although no motion was directed against this finding, seeks to reduce this amount by deducting the liabilities of the partnership and the distributive share of the decedent in partnership income. This valuation of fair market value was decided by the jury upon the whole evidence in that respect and after proper instruction, in my judgment, on that issue. The distributive share was properly included as part of the gross estate. Bull v. United States, 295 U.S. 247, 254, 55 S.Ct. 695, 79 L.Ed. 1421.

I see no merit in the contention of the plaintiff that the insurance policies set forth in paragraphs 11 and 12 of the complaint, issued by the New England Mutual Life Insurance Company and the Equitable Life Assurance Company should not be included in full in the gross estate. Despite the finding of the jury in answer to Question No. 5, that such were purchased from the profits of the L. W. Singer Co., I rule as a matter of law that despite that fact the proceeds of such policies are includible in the gross estate of Mr. Singer. This ruling is based upon the "incidents of ownership" as plainly stated in section 811(g)(2), I.R.C., as amended by section 404(a) of the Revenue Act of 1942, 26 U.S.C.A. § 811(g)(2), and the holdings in Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, and Fernandez v. Wiener, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116.

My conclusions therefore are that the motions of the defendant for a directed verdict are denied, and the motion to set aside the special verdict as against the weight of evidence is denied. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. Judgment may enter for the plaintiff upon the special verdict of the jury except as indicated herein in reference to the life insurance policies, and as to those policies a directed verdict is granted to the defendant as a matter of law, and judgment may so enter. Proposed judgment, if necessary, shall be settled upon five days notice.