**WHAYNE v. GLENN, Collector of Internal Revenue.**

**Civ. No. 1936.**

United States District Court
W. D. Kentucky.

Sept. 8, 1952.

Nelson Helm, Doolan, Helm, Stites & Wood, Louisville, Ky., for plaintiff.

Sewell Key, Theron L. Caudle, Washington, D. C., David C. Walls, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

The complaint in this action was filed June 29, 1950, by plaintiff Roy C. Whayne against the Collector of Internal Revenue in this District, seeking to recover income taxes and interest paid by the plaintiff on assessments made by the Commissioner for the years 1942–1945, inclusive, which assessments were based upon the Commissioner's finding that Roy C. Whayne should be charged for the years in question with the tax on the income of a fifteen percent interest in the partnership of Roy C. Whayne Supply Company given to his wife by plaintiff.

The same question, but pertaining to other years, was involved in case number 551, pending in this Court and in which an opinion was rendered March 6, 1945, by Judge Shackelford Miller, Jr., now a member of the Court of Appeals for this Circuit, then District Judge. The opinion may be found in D. C., 59 F.Supp. 517.

While the opinion of Judge Miller in conclusion directs Counsel for plaintiff to prepare and tender for entry judgment in accordance with his findings, no such judgment was prepared.

On February 26, 1946, the Supreme Court decided the cases of Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. Subsequently, on May 17, 1946, the Collector filed a motion for judgment notwithstanding the Court's opinion, findings of fact and conclusions of law embodied in the memorandum of March 6, 1945, because the opinion was alleged to be "contrary to recent decisions of the Supreme Court." A request was made that defendant's motion be set for oral argument.

Subsequently, on September 19, 1947, an order was entered dismissing Action No. 551, "with prejudice". Immediately preceding the entry of this order, Counsel for plaintiff and defendant filed a joint motion to dismiss the action "with prejudice", stating that they had "agreed upon a compromise settlement of their rights involved in this action on the basis set forth in a stipulation" attached to and made a part of the motion to dismiss.

Paragraph (1) (c) of that stipulation provided—

"The income from the interest in Roy C. Whayne Supply Company, given by Roy C. Whayne to Bessie C. Whayne on or about September 13, 1940, shall be held taxable to Roy C. Whayne and not to Bessie C. Whayne" * * *.

There was involved in the former actions income taxes for the years 1938, 1939 and 1940.

The Revenue Agent, on November 18, 1947, forwarded to Roy C. Whayne a report in detail for the years 1942–1943, 1944 and 1945, which statement was said by the Agent in Charge to explain "briefly how settlement of the agreed tax liability will be accomplished through the office of the Collector of Internal Revenue for your district". The assessment was made by the

Commissioner and on December 3, 1947, Roy C. Whayne acknowledged receipt of the Revenue Agent's report, showing the deficiency aggregating $193,509.75 and agreed to the Agent's findings, advised of his previously signing and forwarding to the office of the Internal Revenue Agent in Charge at Louisville, Form 870, agreeing to pay the taxes and declaring "I don't intend to protest these findings".

Plaintiff paid the taxes and on June 29, 1949, filed his claims for refund and following the disallowance of the claims, instituted this action to recover the taxes. The Collector, by answer, denied that plaintiff's wife Bessie C. Whayne was a bona fide partner for income tax purposes; alleged that the plaintiff, by reason of the agreement entered into in the former suit No. 551 and the companion action No. 856, involving a trust set up by plaintiff for his wife and three children, was precluded from attempting to recover the taxes paid, particularly for the first half of the calendar year 1942, and plead that the stipulation and the acts, conduct, representations and promises of the plaintiff estopped him from successfully maintaining this suit.

The Collector also interposed by way of set-off or counterclaim four credits which had been allowed Bessie C. Whayne on the books of the Roy C. Whayne Supply Company in the years 1942, 1943, 1944 and 1945, when such sums would have been included in the income of the plaintiff except for the agreement evidenced by the stipulation.

The evidence in the case consisted entirely of a stipulation, which, among other things included the testimony heard by this Court on the trial of the former case No. 551, when that case was tried before Judge Miller on the 23rd of May 1944.

Also included are paragraphs 45 to 49 inclusive of a stipulation of facts filed in Action No. 551 on May 23, 1944. Also included in the evidence in this case, subject to relevancy and competency, are defendant's motion for judgment, the Court's opinion, findings of fact and conclusions of law, the motion to dismiss filed by both parties September 18, 1946, to which was attached the stipulation signed by the parties of September 18, 1947, and the order dismissing action No. 551 with prejudice.

The amendments to the partnership agreement, one dated September 20, 1940, the second June 30, 1942, were to be considered as evidence in this case.

It was further stipulated that the general conduct of the Roy C. Whayne Supply Company was substantially the same for the years 1942, 1943, 1944 and 1945, as during the prior years 1938, 1939 and 1940, involved in former action No. 551, except with respect to the partnership right of Bessie C. Whayne under the supplemental partnership agreement dated June 30, 1942.

It was stipulated that on July 1, 1945, the business then and theretofore known as Roy C. Whayne Supply Company, together with the assets of that partnership, were taken over by a Kentucky Corporation, known as Roy C. Whayne Supply Company, with its capital stock held by Roy C. Whayne, Harry T. Whayne, and Bessie C. Whayne, in proportion to their interest in the partnership—that is Roy C. Whayne sixty-five percent, Harry T. Whayne, twenty percent and Bessie C. Whayne, fifteen percent.

It was agreed in the stipulation that at no time following the execution by Roy C. Whayne of the document on Treasury Department Form 870 and filed with the Agent in Charge at Louisville on November 21, 1947, agreeing to the assessment to Roy C. Whayne for the years 1942–1943, 1944 and 1945, of the tax on the income allocated on the books of the partnership to Bessie C. Whayne aggregating $193,509.75, did the Commissioner execute or give to Roy C. Whayne a final, closing agreement under the provisions of Section 3760 of the Internal Revenue Code, 26 U.S.C.A. § 3760.

That section of the Code provides that when an agreement is reached between the Commissioner and any person relating to the liability of such person in respect to any internal revenue tax for any taxable period, and the agreement is approved by the Secretary or Under-Secretary within such time as may be stated in the agreement or letter, such agreement should be final and conclusive except upon a showing of fraud or malfeasance, or misrepresentation of a ma-

terial fact, and shall not be reopened as to the matters agreed upon.

The Court makes the following—

### Findings of Fact

1. Prior to September 13, 1940, Roy C. Whayne Supply Company had for many years been a partnership composed of Roy C. Whayne, and Harry T. Whayne. The partnership engaged in the business of selling, renting and servicing road and construction machinery. The interest of Roy C. Whayne was eighty percent and his brother Harry T. Whayne owned the remaining twenty percent.

September 13, 1940, Roy C. Whayne gave to his wife, Bessie C. Whayne, a fifteen percent interest in the partnership business. The gift was evidenced by a written amendment to the partnership.

The articles of partnership, as amended, provided that Bessie C. Whayne would be a silent partner, required to devote none of her time to the firm and prohibiting her from taking any active part in the conduct of the business or the execution of contracts or transactions of business generally; provided she would draw no salary and could not, over a period of twenty-five years, from September 13, 1940, withdraw any profits from any part of the fifteen percent interest, unless agreed to by Roy C. Whayne; it was provided that the restrictions on withdrawal would be terminated by the prior death or disability of Roy C. Whayne and there was further provision made that in the event of the death or withdrawal of a partner or the dissolution of the firm, Roy C. Whayne or his wife Bessie C. Whayne should have a right superior to that of Harry T. Whayne to acquire the interest of the other and Roy C. Whayne would have a right superior to that of Bessie C. Whayne to acquire the interest of Harry T. Whayne. Roy C. Whayne retained an option to repurchase for himself a part or all of Bessie C. Whayne's interest at a fair value thereof.

2. After September 13, 1940, the books of the partnership reflected the interest of Bessie C. Whayne and she was credited thereafter with fifteen percent of the net profits which the partnership earned.

3. June 30, 1942, the partnership agreement of September 13, 1940, was further amended so as to remove the above restrictions on the interest of Bessie C. Whayne.

4. Bessie C. Whayne has never drawn a salary; has never performed any services; has had no part in the management of the partnership's activities; has contributed nothing to the capital other than the original gift of fifteen percent made to her by her husband and has not withdrawn any money from the firm.

5. The partnership between Roy C. Whayne and Harry T. Whayne was formed in 1913. Up to 1938, the business had reasonable prosperity, but had not greatly expanded. In that year, however, it began to and by 1942 had grown into a national business and had enjoyed very large net profits. The partnership carried a large inventory.

6. Roy C. Whayne testified in Action No. 551, that his reason for giving his wife an interest in the partnership was to "establish an estate for her" and to increase the amount that she had for her own use and that while the tax saving was not the prime motive, it was considered.

7. By a written stipulation filed in Action No. 551, on September 18, 1947, Roy C. Whayne agreed that "the income from the interest in Roy C. Whayne Supply Company given by Roy C. Whayne to Bessie C. Whayne on or about September 13, 1940, should be held taxable to Roy C. Whayne and not to Bessie C. Whayne."

On September 19, 1947, Action No. 551 was dismissed "with prejudice".

8. Following dismissal of that litigation and on November 18, 1947, a representative of the Agent in Charge at Louisville prepared a report providing in part for the settlement of the income tax of Roy C. Whayne and Bessie C. Whayne for the years 1942 through 1945, in accordance with the written stipulation filed in Action No. 551 September 18, 1947. The Agent's report was agreed to by Roy C. Whayne, as evidenced by his execution on November 21, 1947, of Form 870, wherein in substante, he promised to pay the deficiency and not to file a claim for refund for any of the years in question.

9. The Statute of Limitations tolling the right of the Commissioner to make assessments against Roy C. Whayne for the year 1945 matured March 15, 1949 and for the years 1942 through 1944, the Statute matured June 30, 1949.

By letter dated June 4, 1948, addressed to the Commissioner of Internal Revenue, Roy C. Whayne undertook to revoke his agreement accepting the report of the Agent in Charge and agreeing to pay the tax and not to file a claim for refund and did thereafter as above set forth, file his claims for refund and upon disallowance, instituted this suit.

### Conclusions of Law

1. Two legal questions are presented; (1) Was Bessie C. Whayne a bona fide partner for business purposes in the Roy C. Whayne Supply Company, so that the portion of the net earnings of the partnership allocated to her on the books of the company constituted income to her, or should that be included in the income of the plaintiff Roy C. Whayne? (2) What is the legal effect of Roy C. Whayne's agreement, evidenced by the stipulation, filed of record in this Court in Action No. 551 and by the execution of Forms 870 and 1291?

Or stated otherwise, could Roy C. Whayne, by the letter of June 4, 1948, legally repudiate the settlement agreed to because of the failure of the Commissioner to execute a closing agreement in accordance with the provisions of Section 3760 of the Internal Revenue Code?

The first problem is the proper application of the cases of Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, and Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, to the facts of this case.

■ The Culbertson case corrected a prevalent misapprehension of the Tower case that in the latter, there was some objective standard, either the performance of service or investment of capital by a partner, which ipso facto distinguished a valid family partnership for tax purposes. The Culbertson case teaches that all of the facts must be considered—the agreement, the conduct of the parties in the execution of its provisions, their statements, the testimony of disinterested persons, the relation of the parties, their respective abilities and capital contributions, the actual control of the income and the purposes for which it is used, and any other facts throwing light on their true intent and finally to determine whether the parties in *good faith* and acting with a *business purpose,* intended to join together in the present conduct of the business.

■ Intent and good faith, though difficult sometimes to ascertain, become the mud sills and each case is to be determined in the light of its peculiar facts.

The Court said—

"If the donee of property who then invests it in family partnership exercises dominion and control over that property—and through that control influences the conduct of the partnership and the disposition of its income—he may well be a true partner. Whether he is free to and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise."

■ However, the Culbertson case leaves undisturbed the real doctrine of the Tower and Lusthaus cases—that a valid family partnership for tax purposes is not to be recognized in a situation where the shift of tax incidence by surface changes of ownership has occurred without disturbing the dominion and control over the subject of the gift or the purpose for which the income from the property is used.

■ The case excludes from valid family partnerships for tax purposes the interest of alleged partners who contribute nothing during the tax period and reasserts that income must be taxed to him who earns it.

Since the Culbertson case, the Court of Appeals of our Circuit has considered family partnerships in the cases of Denison v. Commissioner, 6 Cir., 180 F.2d 938, Miller v. Commissioner, 6 Cir., 183 F.2d 246 and Cobb v. Commissioner, 6 Cir., 185 F.2d 255.

The Tax Court has decided the cases of Delchamps v. Commissioner, 13 T.C. 281 and Theurkauf v. Commissioner, 13 T.C.

529, all of which cases are discussed by Counsel and relied upon as persuasive of the contentions of each party.

The distinction between the five cases last referred to and the case at bar is that in the case at bar, the donee of the fifteen percent interest in the family partnership contributed nothing to the partnership, save and except the gift. She did not participate in the conduct or management of the business and so far as the evidence shows, was not consulted concerning any policies or practices employed by the plaintiff and his brother, although in one year, the net profit from the operation of the business aggregated approximately half a million dollars.

She does not testify in the case. Plaintiff testifies that his prime motive was to establish an estate for his wife, though the reduction of his taxes was a feature considered at the time the gift was made.

In the Denison and Miller cases, the wife materially participated in the business and in the Delchamps and Theurkauf cases, the husband was paid a salary commensurate with his services, for his management of the business, though in each case,—the wives participated. In the Delchamps case, the wife did general office work and in the Theurkauf case, the wife furnished a small amount of capital originating with herself, which was the proceeds of her shares of stock in a corporation, which was dissolved prior to the formation of the partnership.

The fact that when the gift of the fifteen percent in the partnership was first made to Mrs. Whayne, there were numerous restrictions forbidding her from participating in any wise in the business enterprise or withdrawing funds arising from income except with the consent of the donor and the fact that these restrictions were removed soon after the decisions of the Supreme Court in the Tower and Lusthaus cases, indicate to this Court that the intention of the parties was something less than a bona fide joining together in partnership for a business purpose

That the bona fide intention did not exist is indicated by the fact that after 1945, the last of the years in question in this case, had passed, the parties in good faith entered into an agreement with the Commissioner, which recognized their belief that the income on the fifteen percent interest in the partnership was properly taxable to the plaintiff Roy C. Whayne and he agreed to pay it. The intention of the parties could in no wise be better reflected than by this agreement, evidenced as it was on numerous forms and by written statements.

11. As to the second legal question —that is whether Roy C. Whayne had the legal right to repudiate the agreement to avoid the income on the wife's interest being taxed to himself and not to file claims for refund—which he did by his letter of June 4, 1948—this Court held in the case of Steiden Stores v. Glenn, D.C., 94 F.Supp. 712, on the authority of Botany Worsted Mills v. United States, 278 U.S. 282, 49 S. Ct. 129, 73 L.Ed. 379, and Joyce v. Gentsch, 6 Cir., 141 F.2d 891, that until and unless the taxpayer's agreement was executed by the Government, as required by Section 3760 of the Internal Revenue Code, the taxpayer could repudiate it. This repudiation, however, has no significance in this case, because it is the conclusion of the Court that the tax accruing during the years in question on the fifteen percent interest in the partnership given to Mrs. Whayne, was properly taxable to Roy C. Whayne.

It is therefore concluded that the evidence in this case is not sufficient to overthrow the conclusion of the Commissioner and his assessments based upon his conclusions that the plaintiff Roy C. Whayne was properly taxable for the years in question with the income on the interest in the partnership given to his wife by him.

Judgment to that effect will be tendered by Counsel for the defendant, upon notice to plaintiff.