## WHAYNE v. GLENN.
### Civ. A. No. 1936.

United States District Court
W. D. Kentucky, at Louisville.
Sept. 16, 1953.

Nelson Helm, Doolan, Helm, Stites & Wood, Louisville, Ky., for plaintiff.

Sewell Key, Washington, D. C., Chas. F. Wood, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

The instant action was brought to recover taxes paid by plaintiff when defendant Collector found that income earned by plaintiff's wife as a partner in Roy C. Whayne Supply Company was taxable to plaintiff. The case was tried upon stipula-

tions. On September 8, 1952, the Court filed findings of fact and conclusions of law, and on September 19, 1952, entered judgment in favor of defendant Collector against plaintiff taxpayer.

Thereafter, on October 1, 1952, the Court set side the judgment on motion of plaintiff.

On March 2, 1953, the Collector gave notice to plaintiff that on March 9, 1953, a motion for judgment filed by defendant the same day would be argued. By inadventure, the Court entered judgment in favor of defendant Collector against plaintiff taxpayer on March 2, 1953.

When defendant's counsel discovered the entry of judgment on March 2, 1953, and called the Court's attention to its premature entry, the Court voided it.

Before March 9, 1953, the date set for hearing the Collector's motion for judgment, counsel for both sides orally agreed that no motion for judgment should be made for thirty days. About March 30, 1953, counsel for both sides orally agreed that within thirty days thereafter counsel for plaintiff might file a motion to revise the judgment.

About April 29, 1953, plaintiff's counsel filed a motion for leave to amend the complaint "to show that his claim is asserted against defendant, Selden R. Glenn, individually and as former Collector of Internal Revenue." On the same day, plaintiff's counsel also moved the Court "to reconsider and revise its Findings of Fact and Conclusions of Law heretofore rendered."

Plaintiff's counsel filed a brief setting out the particulars in which revisions were sought. Defendant's counsel filed a brief opposing plaintiff's motion to revise and reconsider on the ground that under the Federal Rules of Civil Procedure, 28 U.S. C.A., such motion was not timely. Plaintiff's counsel filed a reply brief.

### Questions Presented

At the outset it is necessary to dispose of the Collector's contention that taxpayer's motion to reconsider and revise is not timely filed, for if this contention has merit, the Court is without jurisdiction to hear taxpayer's motion on its merits.

In view of the mutual agreements of counsel for both parties extending the time in which plaintiff could file his motion to revise and reconsider the findings of fact and conclusions of law, defendant should be held to have waived the provision of the rules requiring such a motion to be filed within ten days of the entry of judgment. Leishman v. Associated Wholesale Electric Company, 318 U.S. 203, 63 S.Ct. 543, 87 L.Ed. 714, cited by defendant is not in point. The decision in that case states, 318 U.S. at page 206, 63 S.Ct. at page 545, that the "10 day limit for filing fixed in Rule 59 cannot be enlarged under Rule 6(b) except as provided in subsection (c) of Rule 59." Here no enlargement is made under Rule 6(b) by Court order, but the extension of time within which plaintiff filed his motion resulted from express agreement of counsel for both parties, as set out in the statement of facts, supra. In Z and F Assets Realization Corporation v. Hull, D.C., 31 F.Supp. 371, Id., 72 App.D.C. 234, 114 F.2d 464, Id., 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288, the parties had not agreed, as they have here, to an extension of time in which plaintiff could move for a reargument, but plaintiff there sought to make the motion as of right after the ten-day period had expired and after appeals had been perfected.

It follows therefore that defendant's objection to the timeliness of plaintiff's motion is not well taken and must be overruled.

The several particulars in which plaintiff's counsel desires revisions in the Court's findings and conclusions will be discussed serially.

1. The Court has overlooked on page two of the Opinion, [107 F.Supp. 311] in Finding No. 7, and on page eleven of the Opinion [107 F.Supp. 313], a highly material qualification upon Roy C. Whayne's "belief that the income on the fifteen percent interest in the partnership was properly taxable to the plaintiff Roy C. Whayne and he agreed to pay it."

This contention seems to be supported by the record.

The stipulation in paragraph 1 of which Roy C. Whayne agreed that the income

from Bessie Whayne's partnership interest should be taxable to himself provided as follows in paragraph 3—

"The basis above provided for treatment of the * * * Partnership Interest * * * shall be binding upon the parties for the remaining period that the relevant facts remaining unchanged, to-wit, until June 30, 1942."

The significance of the date June 30, 1942, was that, after that date, the restrictions upon Bessie Whayne's partnership interest by the original partnership agreement were removed, effective that date.

These restrictions provided that she should be a silent partner, should not be required to devote any time to the business, should not be authorized to take any active part in the business or act for it, should not draw a salary, and should not, with certain exceptions, withdraw any part of her investment in or profits from the firm for twenty-five years. Roy C. Whayne had an option, under the restrictions, to repurchase Bessie Whayne's interest.

It follows, therefore, that Roy C. Whayne expressly limited his agreement that Bessie Whayne's partnership income should be taxable to himself only until June 30, 1942.

The Court's opinion should be revised accordingly. The stipulation is not an admission by Roy C. Whayne with respect to the period after June 30, 1942, which is the period now in suit and this date was long before and not shortly after the Tower and Lusthaus decisions, as Opinion page 2 [107 F.Supp. 311] indicates.

2. The Court erred in stating in Finding No. 8 that the Agent in Charge at Louisville prepared a report providing for settlement of the tax liability for 1942–1945 "in accordance with the written stipulation filed in Action No. 551 September 18, 1947." 107 F.Supp. 311.

This contention seems to be supported by the record.

What has been said in paragraph 1 above shows that the stipulation was expressly limited to the period ended June 30, 1942, therefore, the Agent's report could not have accorded with that stipulation. The period covered by the Agent's report began after the period covered by the stipulation had ended.

It is a fact, however, that Roy C. Whayne agreed to the Agent's report, notwithstanding the fact that his prior stipulation did not bind him to agree to it.

3. The Court erred in construing the Forms 870 and 1291 as agreements by Roy C. Whayne to pay the tax assessed against Bessie Whayne.

This contention seems to be supported by the record.

Form 870, executed by the taxpayer, was not dated, but it was stamped filed by the Agent in Charge, November 21, 1947. (Plaintiff's exhibit F.) The warning contained on the face thereof that "It is not, however, a final closing agreement under Section 3760 of the Internal Revenue Code [26 U.S.C.A. § 3760]" shows that, although styled an agreement, it is in fact, until accepted by the Bureau, an offer to agree.

Form 1291, executed by the taxpayer on December 3, 1947, similarly is an offer to agree, rather than an agreement. (Plaintiff's exhibit I.)

The Court concluded that Roy C. Whayne had the right to repudiate the Forms 870 and 1291, which he executed. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, and accordingly could not have considered the forms binding agreements.

4. The offers made by Roy C. Whayne in executing Forms 870 and 1291 are of little evidentiary value in determining whether Roy C. Whayne made Bessie Whayne a partner in good faith for a business purpose. The circumstances surrounding the execution of these forms seem to support this contention. Plaintiff's brief convincingly states the proposition in these words (pp. 9–11)—

"The execution of these forms could not have constituted any admission that Mrs. Whayne was not a bona fide partner, since at this time, as when the stipulation in No. 551 was signed, the Culbertson case had not been decided, and the Bureau was still following the Tower rule that without original capital and vital services a partnership would not be recognized for tax purposes,

regardless of its good faith and its validity under general law. Mr. Whayne realized that the 'objective tests' of the Tower case might bar him from any relief. They were still in force, and admittedly they could not be met. The fact of good faith was not in issue, since, as the law then stood, good faith was no protection to him. The good faith rule of the Culbertson case had not yet been announced. That decision came in 1949, and this was 1947.

"So, again as in the case of the compromise settlement stipulation, the steps he took to minimize his liability, which seemed inescapable under the arbitrary 'objective tests', were no indication of doubt on his part that the partnership had been created and carried on in good faith, or that it failed to comply with any other requirement than the 'objective tests' which have now been recognized as erroneous."

Furthermore, plaintiff cites legal authorities to support his right to seek relief from having Bessie Whayne's income taxable to him, notwithstanding his previous offer to pay the tax.

Thus in Newman v. Dickson, 305 Ky. 279, 203 S.W.2d 33, 34, taxpayer listed for taxation as of July 1, 1945, her present right to receive future income from a life insurance policy. Such listing resulted in a tax bill for $311.93. In so listing the property, taxpayer relied upon what she thought the law to be as declared by a decision of the Kentucky Court of Appeals handed down on June 22, 1945. Later, on June 4, 1946, the Court withdrew the foregoing opinion and in a new opinion held that the "decision shall be given prospective effect only."

This meant that taxpayer and others similarly situated were not required to list their property for taxation until July 1, 1946.

Accordingly, the Court held, 305 Ky. at page 282, 203 S.W.2d at page 351—

" * * * the fact that she honestly listed the property as of July 1, 1945, on the faith * * * of this court's opinion in the Drake case, does not preclude her from resisting collection of the tax. There is no element of estoppel. As a general rule a taxpayer who has listed property for taxation under a mistake, either of law or fact, may have the error corrected. The rule is stated thus in 51 Am.Jur., Taxation, section 667: 'A mistake in a tax return does not preclude a taxpayer from showing the actual facts and from having his tax liability determined by correct principles of law applicable to such facts, where he acted in good faith and did not intend to mislead the taxing authorities.' "

■ Like reasoning is applicable to the present case. When Roy C. Whayne offered to pay the tax on Bessie Whayne's partnership income in 1947, the then state of the law on such matters as laid down by the Tower and Lusthaus decisions materially differed from the state of the law on the same subject, after Culbertson in 1950, when Roy C. Whayne filed this suit to recover taxes paid.

Roy C. Whayne revoked his offer to pay the tax on Bessie Whayne's partnership well before the statute of limitations had barred any right of the Government to make assessments against him.

For the purposes of this action, Roy C. Whayne's execution of Forms 870 and 1291 does not evidence bad faith on his part.

■ 5. Notwithstanding the above changes made in the Court's Opinion at plaintiff's request, the Court's conclusion remains unchanged that Bessie Whayne's partnership income is properly taxable to Roy C. Whayne.

The following additional facts not found in the Court's Opinion, but which plaintiff requests to be included therein, are supported by the record:

(A) The parties stipulated that Roy C. Whayne would testify that the partners entered into their agreement in good faith. (Stip. No. 3.)

(B) The books of the partnership were at all times kept in accordance with the agreement. (Stip. No. 4.)

(C) After the execution of the amendment to the partnership agreement (and therefore at all times relevant to this action) Bessie Whayne had the same legal rights and liabilities as did the other partners with respect to the firm. (Stip. No. 48.)

(D) Bessie Whayne may have contributed some capital to the firm other than that which she received as a gift by virtue of leaving in the firm some of the income from her gift share, but the proof thereof is not evident.

(E) Each of the partners individually upon his or her individual return for income tax purposes for the year 1940 and each subsequent year has reported income accordingly. (Stip. No. 46.)

(F) Roy C. and Harry T. Whayne have received salaries for their personal services to the Company. Bessie C. Whayne has rendered no such services and received no salary. (Stip. No. 47.)

(G) Bessie Whayne after September 30, 1940, was held out to the public as a partner. (Stip. No. 49.)

The fundamental question to be answered is—What bona fide business purpose led to the establishment of the partnership? Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, states the matter as follows—

"The question is * * * whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

If it be conceded that Roy C. Whayne made Bessie Whayne a partner in good faith, the question cannot be answered favorably to Roy C. Whayne's tax contentions, unless Roy C. Whayne not only acted in good faith but "with a business purpose."

Tax avoidance was considered, Whayne's counsel concedes, when the partnership agreement was made. But, counsel says, that was not the motivating consideration for entering into this partnership agreement.

The only motive ever advanced for creating this partnership interest in Bessie Whayne was to enable her to acquire an estate of her own. Counsel states the proposition in his brief in these words:

" * * * She used the gift to create a separate estate for herself, in accordance with her own inclination and her husband's expressed purpose in giving it to her, in which she had every reason to concur. Since Mrs. Whayne had neither the qualifications nor the inclination to take an active part in the management of the business, she did not do so, though she unquestionably had the same legal rights in management as the other partners. * * *"

What was accomplished by the partnership arrangement to create a separate estate for Bessie Whayne which could not have been accomplished by Roy C. Whayne's simply giving Bessie Whayne such part of the firm's accumulations as might be available for her?

The ready answer is that a considerable income tax savings might be accomplished by creating the separate estate through the gift of a partnership interest. Thus, since the motivating purpose of creating a separate estate could be fulfilled without the partnership arrangement, the incidental tax avoidance consideration becomes, in fact, the deciding controlling, and only real purpose in the arrangement. This is true because—(1) any capital contributed by Bessie Whayne was originally in the firm at the time she was made a partner or was subsequently earned from this same capital; (2) Bessie Whayne contributed no services to the firm, was unable to do so, and was not expected to do so; (3) Bessie Whayne possessed no managerial ability, and (4) Bessie Whayne was not expected to be able to conduct the business in the future or to provide in the future any quantum of business value not existing at the time she entered the firm, and none existed at that time.

In short, the creation of this partnership through gift of an interest therein to Bessie Whayne, wife of the senior partner, solely in order to create a separate estate for her, does not accomplish a business purpose.

Miller v. Commissioner, 6 Cir., 183 F.2d 246, cited by plaintiff, states at page 252 that the true test of a valid family partnership is whether or not the parties "in good faith *and acting with a business purpose,* intended to join together in the conduct of the enterprise". (Emphasis added.)

That case decided that a valid family partnership existed in a case where there was a gift by husband to wife of her partnership interest, but where there was abundant evidence—

" * * * that the Millers, even before their marriage, were working together in the drug business; that Mrs. Miller at all times contributed substantial, valuable, and vital services; that her husband gave her a half interest in the business because of her services and because he felt that she was entitled to it; and that this half interest constituted her share of the business, which the parties intended, in good faith, to carry on * * * as a valid partnership." 183 F.2d at page 253.

No such facts appear in the instant case.

Henslee v. Whitson, 6 Cir., 200 F.2d 538, cited by plaintiff, involved the formation of a partnership by assignment of an interest therein to a wife of one of the parties. The Court, in a per curiam opinion, does not state whether the wife made any contribution of capital or services to the firm, but held for the taxpayers on a finding that the "new partnership had a business purpose and it was the continuation and operation of the Cookeville Planing Mills." 200 F.2d at page 540. It is significant that the Collector presented no evidence, but argued "that the partnership was not for a business purpose * * * of the Whitsons to secure the future of the beneficiaries." 200 F.2d at page 540.

Without a more nearly complete factual statement than that provided by the per curiam decision in Henslee v. Whitson, supra, the Court cannot conclude that the latter case is decisive of the one now before the Court.

Britt's Estate v. Commissioner, 5 Cir., 190 F.2d 946, 950, cited by plaintiff, is distinguishable from the instant case because there:

" * * * the wife contributed substantial services in the past and continued to do so after the reorganization. * * * We find in the evidence no indication that the wife was a 'dummy' partner * * *. She was more active in the management of the new partnership than any of the other partners, save only T. Mark Britt, who was the active manager of the enterprise. Her judgment, advice, and decisions entered into the conduct of the business from day to day. Upon a fair appraisal of the evidence as a whole, a conclusion that she was a mere pseudo partner is not justified."

Ginsburg v. Arnold, 5 Cir., 185 F.2d 913, cited by plaintiff, in which one Judge dissented, held the Fort Worth Pipe and Supply Company to be a valid family partnership for income tax and other purposes. The case is close on its facts to the one now before the Court, but it is nevertheless distinguishable. In that case the Court said, 185 F.2d at page 915:

" * * * The gifts to the children were unrestricted, unlimited, and unconditional. They contributed their property of their own volition, and entered into the partnership of their own free will. Two of them discussed the agreement, and one of them consulted an attorney, before executing it. * * * Appellants also made gifts of other property to the children, the value of which unrestricted gifts was greater than that of the assets of the Fort Worth Pipe and Supply Company given them. These other properties were separable from the business of the company, and could easily have been withheld by the children when the partnership was formed. With the realization that these properties would be subject to the liabilities of the partnership, and of their own free will, the children agreed to contribute these assets to the partnership capital. These other assets were productive of income, and the Commissioner, recognizing the validity of the partnership as to these assets, taxed the income therefrom to all the partners in accordance with their respective interests as set up in the partnership agreement. In determining the good faith of the transaction, we think it highly significant that the Commissioner recognized the validity of the partnership for tax purposes as to these other assets. If the partnership was valid as to these other assets, it should be valid as to all assets."

Alexander v. Commissioner, 5 Cir., 194 F.2d 921, cited by plaintiff, holds, that a

family partnership was not valid for income tax purposes.

Ford v. Commissioner, 19 T.C. 200, cited by plaintiff, is persuasive but does not control the decision of this case. Three members of the Tax Court dissented from the opinion because they were "unable to agree with the majority, that a business purpose was shown in the case," and because "the only purpose intended or achieved by the parties in bringing members of their families into the partnership, was to minimize or to avoid taxes."

### Conclusion

Plaintiff is entitled to have corrections made in the Court's opinion as indicated above, but the result reached therein, that the Roy C. Whayne Company partnership, which included Bessie Whayne, was not created for a business purpose should remain unchanged.